The fifth case is decided on the record and we move to the sixth case or the fifth case today for oral argument. Peraica v. Village of McCook You're representing yourself in this case this morning? I am, for the record, Anthony Peraica representing myself pro se, Judge. May I proceed? Yes. Thank you. May it please the Court, Your Honors, Counsel, we are appealing the ruling of Judge Shader in granting a motion for judgment on the pleadings pursuant to Rule 12c. And we are arguing in our briefs which we have submitted that the ruling was, although permitted under the federal rules premature, did not take into consideration a request for filing of an amended complaint under federal rules of civil procedure, Rule 15. And as far as whether dismissal of the complaint was warranted, not being barred by heck, we believe that it was not. We believe that leave should have been granted to amend the complaint to flesh out some of the factual information. I didn't check, but how did the election come out? I beg your pardon? I didn't check, but how did the election come out? Mr. Tobolsky won the election by a hair. And this wrongful arrest was, we believe, I believe, reason for that outcome. But we're not going to... Didn't have anything to do with missing the sign? I'm sorry? The election didn't have anything to do with the sign being missing? No, the arrest that was done several days before the general election, I believe, was determinative in the close outcome in favor of Mr. Tobolsky, who was the mayor of McCook at the time. It's nothing to do with the outcome of the case. I was just curious. I'm sorry? It's nothing to do with the case. It's a valid question, and I appreciate the question. But I'm not here to re-litigate the election. I'm not here to re-litigate the state criminal action against me. Those matters were litigated before the voters and before the trial judge and the appellate court of the state of Illinois, and those stand. The question here only is whether we, I, would be allowed to proceed in our claim under 42 U.S.C. 1983 for violation of the First Amendment rights that every citizen of this country enjoys. And then the ancillary state claims that were brought as well pursuant to that. That is the issue. It's the criminal case that was tried by the Cook County State's Attorney Alvarez against me in Bridgeview involved alleged actions that I was involved in. This case before Judge Shader involved the actions that McCook and its agents and or employees were involved in. Completely different analysis. The facts are, as stated in the record, that on the date of the event, I was a passenger in a vehicle, not driving, that the driver of that vehicle that I was a passenger in was stopped, was not ticketed at any point. It was let go, in fact, and allowed to proceed until one of the officers at the scene discovered that I was a passenger in that vehicle. Then the whole show was put on to obtain witnesses, which they looked for a witness for about 45 minutes and found the gentleman, got him out of bed, brought him naked to the scene, and he falsely identified me as seeing me tear down the Bolshevik sign. Well does this go to your conviction? No, I'm just setting out the facts as they are. So that issue has been litigated again. We're not here to re-litigate the state court ruling or the appellate court ruling. This is about the violation of constitutional rights that every citizen has to use public ways and do so without being unreasonably prevented or falsely charged. So the issue of preclusion that Judge Shader relied on here, collateral estoppel, res judicata, whatever you want to call it, simply was not appropriate under the circumstances that, and we attached, obviously, Judge Shader's opinion to our brief, was not appropriate under the circumstances. And Judge Shader himself said on page 12 of his decision, quote, because it is undisputed that Pareika can make out the first two elements of his prima facie case without disturbing the state court judgment, this opinion moves directly to the third element. Whether Pareika has alleged facts tending to show that his lawful campaign activity as opposed to his unlawful sign destruction was, quote, at least a motivating factor in the decision to arrest him. So the judge went into the facts without allowing us to develop the facts. Was there probable cause to make the arrest? The judge found that there was. And you were in the Seventh Circuit Court of Appeals. And that was decided in a case where Judge Hibbler wrote an opinion, and we cited it, the case of Webb versus Lanting. And the judge said there, Judge Hibbler wrote, quote, like the court in Thayer, this court need not decide whether the existence of probable cause operates as a bar to the First Amendment retaliatory arrest claim, end of quote. So that's not an element that needs to be established. And it's something that the Seventh Circuit Court of Appeals, I believe, still follows as the law here. So, you know, the issue of preclusion here. What was the name of that case again? That case is cited in our brief, and it is the case of Webb, W-E-B-B versus Lanton, L-A-N-T-O-N. It's 2010 W-L-2-1-0-2-4-1-6. It was not reported, but we did cite it in our brief. Not reported? In Federal Supplement 2nd for 2010. I have it here if you wish to see it. Pardon me? Go ahead. So the points, members of the panel, are that the issue of preclusion only applies to issues actually decided, and the criminal court did not decide constitutional issues regarding the acts of the court. That's a district court case. Beg your pardon? That is a district court case, not a court of appeals case. District court case, that's what I said, Judge Hibbler. Not this court? Correct. It's not binding on this court, is what I'm saying. Well, I'm not disagreeing. I'm just pointing out the fact that in the Seventh Circuit, that has been the rule, as far as I'm aware, that probable cause, the existence of probable cause. But you had a chance to collect, to contest a probable cause in the preliminary hearing. You could have. We did, vigorously, but that's not the subject matter of this case. And how does that relate to Gunther v. Haugaman, which is one of our cases, which says the fine of collateral estoppel applied to prevent plaintiff from bringing a section 1983 claim for false arrest where the defendant had a chance to contest probable cause in a preliminary hearing. Well, if the court will reflect on the record, as I'm sure you did or will, we have withdrawn that claim prior to Judge Shader's ruling, after the appellate court ruled as it did on our state court appeal. We withdrew that count. So that no longer was a subject matter of our federal court complaint. The only thing that we stood on and remained steadfast in pursuing is the 1983 claim, First Amendment violation claim, and the state ancillary claims of defamation, intentional infliction of emotional distress, and negligent infliction of emotional distress. Those were the only ones. The First Amendment is strictly your right to speak out on political issues? The right to be the vehicle that transported our political materials to a destination that unfortunately led us through McCook, a municipality with 230 residents, of whom 100 are registered voters, that Mr. Tobolsky, my opponent, was the mayor of, and his brother-in-law was the deputy police chief, where he has 15 relatives on the payroll, and only won the election by 68 votes. So when he woke up on the day of election, he had 25% of the votes in his pocket already, and wanted to serve both as a mayor and a commissioner, which is prohibited by state statute, but that's a separate issue. The point of the matter is that open roads, public roads, are for public use, and anyone, including someone who's running for office, can be a passenger in a car on a public roadway with his materials in a car, and be free from harassment by the local police. And the harassment was what, calling the mayor? It was pulling that vehicle over, searching it illegally, not citing the driver. At the initial stop? Yeah, not citing the driver, there was no reason to do it except they wanted to and did, letting him go, and then the sergeant comes to the scene, recognizes that I am the passenger, keeps us there for 45 minutes while they manufacture a witness, and proceed with that. How many people did you say live in McCook? 230 souls, total, men, women, and children. There are 120 adults registered. How big a police department do they have? I think they have about, last time I checked, about 35 police officers for a population of 230 people. I said what I wanted to say. Thank you very much for your time. Thank you, Counsel. Not that it has anything to do with this case, but do you agree with Counsel that there's 250 people in McCook and 25 cops? 230. 230? I don't know the specific numbers as I stand here, Your Honor. Is that approximately right? I couldn't even tell you if it's approximately right. Have you ever been there? Have I been to McCook? Yeah. No. No. I may have traveled through it, but I haven't stopped. If there's only 250 people there, 250? If there are 230 people there, you might not have noticed. All right, go ahead. Please, the court. I'm Jennifer Turriello, and I'm here today representing the defendants' appellees in this case. This court should afford preclusive effect to Mr. Pereyka's criminal proceeding as concerns his instant First Amendment retaliatory arrest claim. All the criteria for invoking collateral estoppel under Illinois law are present here. We have the three threshold minimal requirements being that the issue decided in the prior litigation is identical with the one being presented in the case under review. The party against whom estoppel is asserted was a party in the prior litigation. That's undisputed. And that there was a final judgment on the merits in the prior litigation. That's also undisputed. Two additional requirements under Illinois law, that the party against whom estoppel is being invoked had a fair and efficient opportunity to litigate the issue. And finally, that the issue to which preclusion would apply was one that was necessarily decided in the underlying case. Mr. Pereyka disputes that there's an identity of the issues. He disputes that the issue of whether or not his arrest was propelled by a political agenda was actually decided in the criminal proceedings. And he further disputes that that issue was necessary to the judgment in the criminal proceedings. He's wrong on all fronts. Whether his arrest was brought about due to his political rivalry with McCook's mayor was actually litigated and necessarily determined as part of the state criminal proceedings. And the transcript from that proceeding, which is part of the record before the court, clearly bears that out. Judge Kennedy, who was the criminal trial judge, at Mr. Pereyka's bidding, had an opportunity to consider this very issue. That is to say, Mr. Pereyka interjected these issues about my arrest was politically motivated. For him to say, as he said and represented in his briefs, that his defense merely consisted of refuting the state prove the elements of the offense with which he had been charged is belied by the transcript. At every turn, through cross-examination of witnesses, the allegiance, if you will, between the witnesses and McCook's mayor, Mr. Chbosky, was explored by Mr. Pereyka's attorney. Questions about, Mr. Pereyka brought it up here this morning, about the driver of the car wasn't arrested, wasn't charged with anything, but I was. These are all issues that were all questioned. Every witness got questioned about this in the context of the criminal trial. These issues were actually litigated, and after representing in his opening brief that he didn't get a fair opportunity to litigate these issues in his criminal trial, we see an about face. When the reply brief comes in, when faced with this transcript, Mr. Pereyka admits, as he must, that these issues were in fact actually litigated. And there was a contest in the context of the state criminal trial as to, you know, was my arrest propelled by a political rivalry? You know, that's a concession. It's an important concession that he's made. It appears on page four of his reply brief, where he says, defendants focus on the arguments made by the plaintiff in criminal trial about the defendants detaining and arresting him based on political motive or bias, which meets only the first part of the third element for collateral estoppel. So now he's saying, okay, yeah, I litigated the issue, but the judge didn't decide it, and it wasn't necessary for the judge to. The judge did decide it. What Mr. Pereyka's hung up on is that Judge Kennedy didn't make a specific finding of fact to the effect that your arrest was not politically motivated. Judge Kennedy didn't have to do that in order for collateral estoppel to apply. She said enough for us to know that she actually passed on that issue, and she labeled this claim that Mr. Pereyka is now trying to litigate in federal court as being speculative. And to that end, she said, quote, as far as my decision in this matter, I cannot rule on conjecture. I have to deal with the facts of this case. So she did actually determine this issue, and it was necessary for her to do so as a result of him interjecting it into the criminal proceedings. Could something be, maybe this is sort of hypothetical, but could something be politically motivated? For instance, what was it, he failed to signal a turn or something? The driver, yes. They said, well, could it be that somebody normally wouldn't be arrested for that, but since there was a political motivation, decided to arrest him for that? So you actually have a legal arrest, but for the proper reason. I've given a lot of thought to that question, and I thought that might be something I was asked today. I can certainly conceive of circumstances where you could have an arrest that would be deemed lawful and supported by probable cause, yet there would be room to argue that politics or political animus. Pretextual, as we normally refer to it. You're at a political rally. You step out, you jaywalk. You get arrested. Something like that, where the extremes are, I mean, here, that's not our facts here. I mean, we have a political crime he's accused of and was convicted of destroying campaign signs. And we've heard today already, I mean, this is clearly, he's very much here attempting to re-litigate the state criminal case against him. We've heard him say today, my arrest was wrongful. I was falsely charged. The car was searched illegally. Again, all issues that have already been dispensed with, but he wants to make out a First Amendment claim out of all of that in federal court now. And I would point the court to his actual pleading and count two of his complaint. This claim, he alleges, is described herein, defendants falsely arrested or caused plaintiff to be falsely arrested and unlawfully detained without probable cause because of plaintiff's political affiliation and campaign run against Tobolsky. So this isn't a case where somebody's saying, my arrest was valid, yet it trampled on my First Amendment rights. He's still contesting that his arrest was invalid. And he can't do that. And I just want to make one brief point as well. He mentioned HECBAR. That was an argument that was asserted before the district court. It's not one that we've brought as a basis, an alternative basis, to affirm the judgment on the pleadings ruling that's before the court. We have dropped that argument. It has no role in this appeal. And cases that cite it, and there are many in his briefs, have no role in this appeal. I'd also point out another point to clarify is that the district court never determined, nor did the defendants argue, that because the officers had probable cause to arrest, that his First Amendment retaliation claim failed on that basis. Nobody made that argument. And that's not what the district court's ruling was. And I think the contentions to the contrary that have been put forth in the written submissions before the court are misleading. The district court very much acknowledged that this circuit has not determined that issue. And we have the Abrams and the Thayer decisions telling us that that's an open issue right now. And the district court did not attempt to rule on that and did not reject this claim on that basis. And in similar vein, I'd like to point out the lumping together of the state law claims with this First Amendment retaliatory arrest claim. There's a lot of lumping together in the briefing that's gone on about, you know, my prior suit didn't have anything to do with determining the emotional distress I suffered as a result of this, you know, occurrence. That, too, is confusing. Again, the district court simply dismissed the First Amendment retaliatory arrest claim and refused to exercise jurisdiction over the state law claims. So, Mr. Prorica can go take those claims to state court and attempt to litigate them there. Nothing Judge Shader did prevents him from doing that. There was kind of a two-part thing. I know this is where it gets strung out. You know, the first one was sort of took some time. But as I understand it, was he given a ticket for the improper signal? I don't know that that's part of this record. I don't know the answer to that question. Well, I'll just say apparently not. I would think not. But this is when the other officer comes in, because the owner of the restaurant complained about somebody wrecking the sign, and then they come up with the witness. I don't know what he was wearing. Not very much, I guess. And then he's the one that pointed at him and said, that's the guy, whatever. Obviously, he said it's wrong and all that. So there are two separate things. And I guess that's the second one that is the whatever you want to call it, that had an accusation for a violation of an ordinance or whatever that is. And he was convicted of that. And I guess that's what Judge Shader basically said he would have, sui sponte said it was precluded. He did. He did. Applied to this particular claim that he would have raised it sui sponte. Yes. I see my time is up. If the panel has any additional questions, I'd be happy to answer them. And otherwise, we'd. It's lucky you didn't speed through McCook. Yes. Thank you so much. Thank you, Counselor. Mr. Parreca, your time has expired, but I'll give you one minute to respond. The record, members of the panel, is that the driver of the van, Mario Marcella, was not charged with anything. No tickets were issued. No citations. Nothing. The record also reflects that after the appellate court ruled in an opinion written by Judge Paczynski, we withdrew. I withdrew the false arrest claim and another claim that were barred by that decision. That's not what this case is about. They tried to use smoke and mirrors to focus on that, but that's not what this case is about. This is about the criminal. Not the criminal. Not about what I did or didn't do or allegedly did. That's been decided, and we're not here to relitigate that. You're basically saying your First Amendment claim survives. It was not wiped out by the criminal trial. That's correct. Thank you, Counselor. Thank you. The case will be taken under.